Ivera Medical Corporation v. Hospira, Inc. What we need to look at here is what is not in dispute. What is not in dispute is that the Hong patent includes all the limitations except venting. What is not in dispute is the level of ordinary skill in the art. What's not in dispute is that the prior art contained disinfecting caps and venting caps. What's not in dispute is that... Prior art patents and publications. It's not in dispute that the Chin Loy reference discloses a vented cap. They may dispute that it goes to a different implement or it's a different type of medical device. But in doing so, Ivera focuses too narrowly on the preferred embodiment. Their commercial product relates to a lure-activated valve for an intravenous catheter. The claims, however, are not so limited. The claims don't go to a cleaning device for a medical implement. They're much broader than that. The title of the patent is a cleaning device for a medical implement. In fact, the specification describes medical implement as any tool or object that can be used in a medical setting. It gives numerous examples including access ports on tubing, access ports on catheters, needle-free valves, stopcocks, lure connectors, and even stethoscopes. That's the area of the invention. That's the area of the prior art that we need to look to. Not just the very narrow lure-activated valves for intravenous catheters that is the subject of the commercial embodiment of Ivera. What was the stage of the claim construction at the time of this motion? Claim construction was already resolved, Your Honor. And does it include all of the variables that you just recited? Yes. My recollection is that the term medical implement was not a term that was construed specifically by the court or was not requested to be construed by the court. But the patent specification very clearly states that that's what the term means. I wasn't asking about the specification. I was asking if there had been a formal claim construction as to what's meant by vent. Oh, by vent. Yes, there was. The term vent does not actually appear in the claims. It's called second opening means. Or opening. And the judge determined that that means a vent. All right. Well, you just recited a whole list of things, stopcocks and so on. Are you saying that those were construed as included? Those were construed as included in the term medical implement. The vent is in the cap that goes on to the medical implement. Okay. I'm trying to understand your argument about the breadth of the claim. The claims refer to a cleaning device for a medical implement. And then they go on to describe that the cleaning device has various features, including a first opening and a second opening. In Nivera making their argument about the prior art, they're trying to very narrowly focus on caps for lower activated valves with intravenous catheters. But the caps that are claimed go to a broader subject matter than just lower activated valves or intravenous catheters. The caps can go on any medical implement. And so when you interpret the term medical implement in the claim to which the cap is applied, the term is much broader than the lower activated valves of the commercial embodiment of Nivera. Unlimited, you're saying, by any of the claim limitations? I'm sorry. Such as – I'm really trying to understand this argument, which seems to be curious to me, that you're saying the claims are so broad that they are tainted. Well, they're not so broad that they're tainted. The issue is that Nivera seems to limit the relevant prior art or limit the analysis of the prior art to only that which is directed to lower activated valves or intravenous catheters. They ignore or want to disregard Chin Loy, for example, because they say that it relates to a different medical implement. So are you saying that when the patentee says that the district court erred in not considering the secondary considerations that the breadth of comparison should have included all of these other medical devices? I was speaking more specifically about the basic obviousness issue, not getting into the secondary consideration. On secondary considerations, our argument is that the comparison is not with any of the prior art devices. The comparison that they're making and the comparison that they rely on is with regard to simple swabbing of the end of a device, not to a cap as that may have been. I'm sorry. I may not be following the question. Yes, I hear what you're saying, but I did not have the impression that there were caps to be compared with that were the same, but for the second opening, for example. The comparison was interesting and, if valid, quite powerful. Until this device came along, you had to swab these tips in order to disinfect them, and the difference now was as dramatic, to use the word, that we're told is shown by these data. I'm trying to understand the contrary argument because, as you know, we have a fair number of cases which direct the decision maker to look and see how a device was received in the community. Sure. As being, we have a case that says it can be the most powerful evidence of unobviousness. In this case, Your Honor, the caps sold well. There's no dispute about that, but what IBERA fails to do is to tie that, develop a nexus of that success to the claimed features, and specifically to the venting of the second opening means. Our cases, it's true that they are fact dependent, but the statute requires that the invention as a whole be considered. Yes, Your Honor. Even the invention as a whole, IBERA fails to make any connection between the invention as a whole and the commercial set of the unexpected results. I don't understand this argument. Now, are you saying that once the invention issued that there was more swabbing that happened in the industry, and that's why there was less infections, or that's why there was commercial success for the cap? No, that's not what I'm saying, Your Honor. What I'm saying is that prior to the invention being, prior to the QROS cap being commercially introduced, swabbing was the primary method of cleaning the end of the lower activated valve. In fact, as of today, it still is the primary method of cleaning the end of a lower activated valve in hospitals. What they are saying is that the evidence shows that there is an increase, or rather a decrease, in cold stream infections after the cap was used. That could be attributed to a lot of things. It could be attributed to… Isn't that a fact question? Is that a fact question? Yes. Yes, the issue is a fact question, Your Honor, yes. And they have not put in any evidence to show that it's not. With regard to secondary considerations, and IVERA relies on so-called expert reports, submitted two expert reports, and relies on a number of other declarations. What IVERA fails to point out is that it devoted one sentence in its entire summary judge brief to the issue of secondary considerations. And that sentence was simply, look to these two expert reports. The two expert reports were very conclusory and didn't cite… The district court in deciding summary judgment looks at the evidence on the record, correct? Yes, Your Honor. Not just decide based on argument made in a brief. No. Are you saying that the district court did not have to look at the declarations because counsel referred to them in one sentence? Well, no, Your Honor. There's two issues there. There are expert reports and there are declarations. There are several declarations that were originally filed in the patent office during reexamination of the patent. And those declarations were cited to the court with some other briefing prior to the summary judgment briefing. Six months before any of the summary judgment briefs were filed. Those declarations were not referred to as part of the summary judgment briefing. They were not referred to in the expert reports, and they were not referred to in IVERA's briefs. Only on appeal now has IVERA resurrected those declarations and said, Your Honor, the judge and district court should have gone back through the record, should have looked to some briefings six months ago and realized they submitted these. So the declarations are – they are part of the record. They're part of the record of the case, yes. And as far as I can tell, you did not object to them when they were introduced into the record. When they were introduced into the – that's correct, Your Honor. So you're stuck with them. Yes. Why don't those declarations raise a genuine issue of material fact? They don't raise a genuine issue of material fact because the basic evidence of obviousness is so strong. Even if you have a strong showing of secondary considerations of non-obviousness, a clear showing of obviousness cannot be overcome by that. Here, with what is admitted to be undisputed in the record, there's a clear showing of obviousness. And no matter what is said in those declarations, we recognize that they're part of the record, and we're not pointing them out that they're not. It's not enough to overcome the clear showing of obviousness. You've got four declarations, and they all go to the issue of motivation. Isn't that part of a prima facie case? It's part of a prima facie case, yes. It's just one of the many things that are considered as part of that case. Can you remind me, did you argue in your red brief that the declarations that were in the record, but perhaps not referred to in Ivera's opposition to summary judgment, cannot be relied on to defend, I'm sorry, to challenge? To challenge the summary judgment ruling? That's essentially a procedural argument, that it's not enough for something to be in the record. It actually has to have been relied on by the opponent of summary judgment in the summary judgment opposition, and that was not done here. Is that an argument that's in your red brief? We did make that argument, yes, Your Honor. I don't recall the page site, but I know that there were several cases where that has been the case, where there was one case. I can't remember the name of it. There was one case where the declarations that were in a very similar situation were submitted four days from the time the summary judgment briefs were submitted. And in that case, this court found that they should not be relied upon as part of the analysis. And that is the In re Blaisdell court case, where there was a four-day difference. Here we have six months difference from the time that the declarations were submitted to the court from when the summary judgment briefing occurred. And it's much more than the four days we saw in Blaisdell. Any more questions for Mr. Hess? Thank you. Thank you, Mr. Hess. Okay. Your Honor, if I may, I'm just going to give record type. That's all I'm going to do. I'm going to start with the four declarants. At A1062, before the district court, counsel below named names. They said that's what Mr. Buckman says, Morrison says, Huang says, and Lensing says. So the district court clearly had fully understood that the four declarants were part of that record with respect to motivation to combine. I now want to switch to secondary factors. And, Judge Toronto, I was trying to find the Menehay site. I can't find it. I will just cite that in the record at A. Just spell that word. The answer is no, but I can find it for the court. It's M-E-N-Y-H-A-Y within a few letters. Okay. So two other things quickly. You did talk about the court asked about an example on page A5343. It talks about Mr. Buckman's cap and taking the court's point that it's not directly about a medical cap, but it's close. The phrase there is Dr. Buckman's cap was never commercialized because it's extremely complex design and resulting high maintenance cost. And that's one of the references that they talk about in the briefing. So it's close, Your Honor. And then finally, this is very important, in terms of what was right before the court that the court referred to in the decision. So this was argued at the summary judgment and in the decision. There's two reports, Lensing and then also Kennedy. Kennedy at A5658 goes through the sales and talks about how it goes from zero to 300,000 to 10 million to 100 million. So the sales of the claim to invention are in the record right before the court, argued at the summary judgment hearing, in the briefing, and cited. There's no issue about whether that was cited to the district court. And then Lensing at page 5622 and 5623 discusses long-felt need in detail and unexpected results in detail. So we're not in a situation where we're lost without the earlier declaration from Mr. Rogers. We're in a situation where even setting aside the Mr. Rogers declaration that was in the record and we think should be relied on, we had the core information. When you look at all that in the light from what's available to us, we believe it means that under the proper precedent of this court, we should have a chance to have a jury find all these disputed facts and not have the court throw the case out. Thank you, Your Honors. Okay. Thank you, Mr. Gross. And again, Mr. Hess, the case is taken under submission. That concludes the argued cases for this morning.